NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

ANN HOFFMAN, *Petitioner*,

*v.*

THE HONORABLE KEITH MILLER, Judge of the SUPERIOR COURT OF
THE STATE OF ARIZONA, in and for the County of MARICOPA,
*Respondent Judge,*

*v.*

MATTHEW HOFFMAN, *Real Party in Interest*

No. 1 CA-SA 23-0001
FILED 2-9-2023

Petition for Special Action from the Superior Court in Maricopa County
No. FN2022-090673
The Honorable Keith Miller, Judge

**JURISDICTION ACCEPTED; RELIEF GRANTED**

COUNSEL

Berkshire Law Office, Tempe
By Keith Berkshire, Alexandra Sandlin
*Counsel for Petitioner*

The Weingart Firm, PLLC, Tempe
By Adam Weingart
*Co-Counsel for Real Party in Interest*

Hoffman Legal, LLC, Phoenix
By Amy Wilkins Hoffman
*Co-Counsel for Real Party in Interest*

---

## MEMORANDUM DECISION

Presiding Judge Samuel A. Thumma delivered the decision of the Court, in which Judge Randall M. Howe and Chief Judge Kent E. Cattani joined.

---

**T H U M M A**, Judge:

¶1 Ann Hoffman seeks special action review of an order granting Matthew Hoffman's motion to convert her petition for dissolution of marriage into a petition for annulment, and vacating temporary orders. Accepting special action jurisdiction, this court grants relief.

## FACTS AND PROCEDURAL HISTORY

¶2 Ann and Matthew are first cousins who married in California in 2018, when they were 53 years old. They agree that their marriage was valid in California when performed, and remains valid there now. At some point after marrying, they moved to Arizona; Matthew apparently then moved to Texas, while Ann remains in Arizona.

¶3 In February 2022, Ann petitioned for dissolution of the marriage in Maricopa County Superior Court. Matthew's response asked the court to dissolve the marriage. The court then entered temporary orders, including requiring Matthew to pay Ann $1,500 in monthly spousal maintenance.

¶4 Matthew then moved to convert the dissolution petition to a petition for annulment. Conceding "California does not bar marriages between first cousins, and the marriage was valid in the state of California," Matthew argued the marriage is not valid in Arizona. His argument was based on an Arizona statute providing that first cousins less than 65 years old may marry "upon approval of any superior court judge in [Arizona] if

proof has been presented to the judge that one of the cousins is unable to reproduce." Ariz. Rev. Stat. (A.R.S.) § 25-101(A) & (B) (2023).[1]

**¶5**         Ann argued the Full Faith and Credit Clause required Arizona to recognize the California marriage, unless Arizona had a strong public policy against doing so, adding that the statute Matthew relied on shows that Arizona has no strong public policy prohibiting marriages between first cousins. She also argued that, given their ages, they "had both been infertile for many years" before marrying, adding Matthew had a vasectomy before the marriage, which had not been reversed. Matthew's reply argued Ann was not infertile at the time of the marriage, and his pre-marriage vasectomy could be reversed, meaning the marriage did not comply with Arizona's Section 25-101(B).

**¶6**         After oral argument, the superior court granted Matthew's motion and converted the dissolution petition into one seeking annulment. The court noted the parties are first cousins, "neither party is over the age of 65, and the parties did not amend their marriage after moving to Arizona to avail themselves of" A.R.S. §25-101(B). The court also terminated spousal maintenance. This special action followed.

## DISCUSSION

**¶7**         This court has discretion whether to accept special action jurisdiction. *Lincoln v. Holt*, 215 Ariz. 21, 23 ¶ 3 (App. 2007). Relevant factors include whether petitioner has an equally plain, speedy and adequate remedy by appeal. Ariz. R.P. Spec. Act. 1(a). Legal questions about interpreting a statute are well suited for special action review, as are issues of first impression and of statewide importance. *See State v. Bernini*, 230 Ariz. 223, 225 ¶ 5 (App. 2012) (citation omitted). Although Ann could challenge the ruling on appeal, this case raises significant legal questions that are not resolved by existing law, including a novel interpretation of a clear statute enacted more than 30 years ago. Thus, in the exercise of its discretion, this court accepts special action jurisdiction.

**¶8**         By granting Matthew's motion to convert the dissolution petition into one seeking annulment, the superior court implicitly found the marriage was void. *See* A.R.S. § 25–301; *see also Means v. Indus. Comm'n*, 110 Ariz. 72, 75 (1973) (action for annulment, unlike divorce, is "based upon a marriage that may be void or voidable"); 55 C.J.S. MARRIAGE § 83 (2023)

---

[1] Absent material revisions after the relevant dates, statutes and rules cited refer to the current version unless otherwise indicated.

("The theory of an action to annul is that no valid marriage ever came into existence."). But no basis was cited for that finding.

**¶9**        "Unless strong public policy exceptions require otherwise, the validity of [a] marriage is generally determined by the law of the place of marriage." *Donlann v. Macgurn*, 203 Ariz. 380, 383 ¶ 12 (App. 2002); *accord In re Mortenson's Estate*, 83 Ariz. 87, 90 (1957) (addressing first cousin marriage before amendments to A.R.S. § 25-101 allowing such marriages in two circumstances). "The 'strong public policy exceptions' we look to in determining which state's law to apply are those pronounced by the *Arizona* legislature." *Cook v. Cook*, 209 Ariz. 487, 492 ¶ 17 (App. 2005) (citations omitted).

**¶10**        The parties do not dispute that their marriage is valid under California law where it was performed. Matthew's position, which the superior court adopted, is that their California marriage could be recognized in Arizona only if they sought approval by an Arizona court when they moved to Arizona. But Arizona law does not require an Arizona court to approve or amend a marriage valid under the laws of another state when a couple moves to Arizona. Nor does the record show any "strong public policy" in Arizona precluding the marriage here.

**¶11**        By statute, "[m]arriages valid by the laws of the place where contracted are valid in [Arizona], except marriages that are void and prohibited by section 25-101." A.R.S. § 25-112(A). Since 1990, the Arizona Legislature has authorized marriages in Arizona between first cousins in two circumstances. *See* A.R.S. § 25-101(B). The first would not apply because Ann and Matthew are not 65 years old. *Id.* The second would require Ann and Matthew to present proof "that one of [them] is unable to reproduce." *Id.* Matthew had a vasectomy before the marriage, meaning he "is unable to reproduce." Although arguing his vasectomy could be reversed, it has not been, and it was not when the parties were together. Thus, there is no record evidence that Matthew can reproduce. Contrary to Matthew's response, facts "not in the record" cannot support the superior court's ruling.

**¶12**        Matthew's reliance on *Cook*, which declined to recognize a Virginia marriage, is unavailing for similar reasons. *Cook* involved first cousins who legally married in Virginia and then moved to Arizona, but the cousins were not infertile as required by A.R.S. § 25-101(B). 209 Ariz. at 488 ¶ 3 (noting the couple had a child born during the marriage). Given that Arizona law would authorize the marriage between Ann and Matthew, subject to "approval of any superior court judge in" Arizona, unlike in *Cook*,

nothing here shows that "strong public policy exceptions" under Arizona law would prohibit Arizona from recognizing their California marriage. *See Donlann*, 203 Ariz. at 383 ¶ 12.

**¶13** In sum, California law governs whether the marriage is valid, and the parties do not dispute that the marriage is valid under California law. Because the marriage occurred in California, Ann and Matthew did not have to comply with the requirements applicable if they had married in Arizona under A.R.S. § 25-101(B). The very existence of that statute, however, shows that the California marriage is not contrary to "strong public policy exceptions" under Arizona law that would preclude Arizona from recognizing their California marriage. *Donlann*, 203 at 383 ¶ 12. Moreover, given that A.R.S. § 25-101 does not require a couple validly married in another jurisdiction to have an Arizona court approve or amend that marriage when moving to Arizona, the superior court erred in concluding they had to seek such approval.

## CONCLUSION

**¶14** Accepting special action jurisdiction, the court grants relief by vacating the superior court's September 19, 2022 minute entry in its entirety. Having considered the parties financial resources and the reasonableness of their positions, Ann is awarded reasonable attorneys' fees under A.R.S. § 25-324 as well as her taxable costs in this special action proceeding. Having granted Ann relief, the court rejects Matthew's argument that "Ann's position is unreasonable, as it is contrary to the plain language in the statute," and denies his request for attorneys' fees and costs.



AMY M. WOOD • Clerk of the Court
FILED: AA